# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHAREN MARTIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15809** |
| **SCENIC TOURS USA INC.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Pending before this Court is Defendants Scenic Tours Europe AG's and MS Emerald Star AG's ("the Movants") "Motion for Summary Judgment."[1] In this litigation, Plaintiff Sharen Martin's ("Plaintiff") claims that Defendants Scenic Tours (USA) Inc., Scenic Tours Europe AG, Couples Cruise, LLC, and MS Emerald Star AG acted negligently in failing to warn Plaintiff of an allegedly hazardous fire door sill in the hallway of the riverboat the MS EMERALD STAR.[2] In the instant motion, the Movants argue that Plaintiff is subject to a binding forum selection clause, which requires that any litigation be brought in a civil court in Switzerland.[3] The Movants also argue that they did not breach a duty to Plaintiff in maintaining the fire door sill.[4] In opposition, Plaintiff argues that the Movants waived their right to assert improper venue and that several issues of material fact remain regarding whether the Movants breached a duty to maintain the fire door sill.[5] Having considered the motion for summary judgment, the memoranda in support and opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 81.

[2] Rec. Doc. 42.

[3] Rec. Doc. 81-12 at 2–4.

[4] *Id.*

[5] Rec. Doc. 97 at 1.

# I. Background

On October 27, 2015, Plaintiff allegedly tripped and fell on a fire door sill in the hallway of the riverboat the MS EMERALD STAR.[6] In the amended complaint, Plaintiff asserts that Defendants Scenic Tours (USA) Inc., Scenic Tours Europe AG, Couples Cruise, LLC, and MS Emerald Star AG acted negligently in failing to warn Plaintiff of the allegedly hazardous fire door sill.[7] Plaintiff contends that as a result of the fall, she "sustained injuries to her face, facial structure, nose, and right shoulder."[8]

On October 24, 2016, Plaintiff filed a complaint against Scenic Tours (USA) Inc.[9] On October 3, 2017, Plaintiff amended the complaint, adding Scenic Tours Europe AG ("Scenic Europe"), MS Emerald Star AG, and Couples Cruise, LLC ("Couples Cruise") as defendants in the action.[10] On March 8, 2018, the Clerk of Court granted an entry of default against Couples Cruise, LLC.[11] On November 9, 2018, the Court dismissed Scenic Tours (USA) Inc. as a party via a joint motion to dismiss.[12]

On November 5, 2018, the Movants filed the instant motion for summary judgment.[13] On November 13, 2018, the Court granted oral argument on the motion.[14] Also on November 13,

---

[6] Rec. Doc. 1 at 2.

[7] *Id.*

[8] *Id.*

[9] Rec. Doc. 1.

[10] Rec. Doc. 42.

[11] Rec. Doc. 69.

[12] Rec. Doc. 93.

[13] Rec. Doc. 81.

[14] Rec. Doc. 96.

2018, Plaintiff filed an opposition to the motion.[15] With leave of Court, the Movants filed a reply on November 19, 2018.[16] On November 21, 2018, the Court heard oral argument on the motion.[17]

## II. Parties' Arguments

### A.  *The Movants' Arguments in Support of the Motion for Summary Judgment*

The Movants urge the Court to grant summary judgment in their favor for two reasons.[18] First, the Movants argue that Plaintiff's suit is improperly filed in this Court because Plaintiff is bound by a forum selection clause to pursue all litigation against the Movants in a civil court in Switzerland.[19] Next, the Movants assert that they are not liable for negligence because they had no duty to Plaintiff regarding the fire door sill.[20]

### 1.  Forum Selection Clause Agreement

The Movants contend that prior to embarking on the cruise, Plaintiff received notice that she would be bound by a forum selection clause agreement ("FSC").[21] The Movants assert that Scenic Europe chartered the MS EMERALD STAR to Couples Cruise.[22] The Movants allege that they issued a ticket to Couples Cruise, and the Passenger Ticket Terms and Conditions ("PTTC") "contain[ed] a provision that provides that the sole jurisdiction for any suit by any passenger or

---

[15] Rec. Doc. 97.

[16] Rec. Doc. 100.

[17] Rec. Doc. 109.

[18] Rec. Doc. 81-12 at 1.

[19] *Id.* at 2.

[20] *Id.* at 3.

[21] *Id.* at 2.

[22] *Id.*

any person in a passenger's party against MV Emerald Star AG and/or its agents is in the civil court in Basel, Switzerland."[23]

The Movants further allege that Plaintiff had notice of this provision because her friends and hosts, Teresa and Robert Hannaford ("the Hannafords"), received the ticket, and "under the general maritime law a guest of a fellow passenger, who has received notice of the provisions of a ticket, has constructive notice of the contractual limitations associated with the ticket, even if the guest has never had possession of the ticket and has no actual contractual limitations."[24] Thus, the Movants argue that Plaintiff had constructive notice of the terms of the FSC.[25]

The Movants further argue that the terms of the FSC are enforceable under federal maritime law.[26] The Movants assert that the Hannafords, and hence Plaintiff, received and agreed to the terms before embarking and the terms were not unreasonable so as to preclude enforcement.[27] The Movants allege that the FSC "is clear and unambiguous" and was "in readable print and not hidden in a voluminous document or on the back of another document."[28] Further, the Movants contend that it is not unfair to have Switzerland as a chosen forum when the cruise was in Europe.[29] The Movants assert that Plaintiff admitted in her deposition that she has traveled to Europe at least

---

[23] *Id.*

[24] *Id.* at 3.

[25] *Id.* at 20–21.

[26] *Id.* at 21–22.

[27] *Id.* at 22.

[28] *Id.* at 23.

[29] *Id.* at 22–23.

twice, and Swiss law would not be unfair or "deprive Plaintiff of a remedy."[30] Therefore, the Movants argue that the FSC should be enforced.[31]

## 2. Negligence

Next, the Movants argue that they are not liable for negligence because Plaintiff cannot prove that the Movants had a duty to her or that they breached any duty.[32] The Movants first assert that the fire door sill was not a dangerous condition because it "complies with all law, rules and regulations."[33] The Movants rely on the Declarations of Lucas Sandmeier ("Mr. Sandmeier"), the General Manager of Operations and Administration for Scenic Europe, and Bas Joormann ("Mr. Joormann"), an individual with 30 years of experience in design, construction, and certification of inland waterway passenger vessels.[34] The Movants assert that these declarations establish that "the EMERALD STAR, in general, and the fire door sill at issue, in particular, complied with all applicable laws, rules and regulations and had acquired all legally required certificates and documentation."[35] The Movants also point to Mr. Joormann's statement that the EMERALD STAR was manufactured similar to other European ships and the fire door sill had a "very common construction for fire door sills on many vessels."[36]

---

[30] *Id.* at 23.

[31] *Id.* at 24.

[32] *Id.*

[33] *Id.* at 3.

[34] *Id.* at 5–9.

[35] *Id.* at 25.

[36] *Id.* at 9.

Next, the Movants assert that the fire door sill did not create an unreasonable risk to Plaintiff because it was an "open and obvious condition" of which Plaintiff was aware.[37] The Movants argue that Plaintiff "successfully traversed the fire door sill at issue at least 40-50 times over the seven plus days she was on the ship before the occasion when she tripped on October 27, 2015."[38] The Movants further assert that "Plaintiff could have easily avoided tripping on the open and obvious fire door sill by paying reasonable attention to where she was going, which she admittedly did not do."[39] The Movants allege that "[a]t the time of the incident, Plaintiff was hurrying to the ship's dining room for lunch, talking to her husband and she cannot attest that she was paying proper attention at the time that she fell."[40] Accordingly, the Movants argue that Plaintiff was "not in ordinary use of her senses" and "her injury could have been avoided."[41]

Finally, the Movants argue that they did not breach a duty to Plaintiff because they had no knowledge of a dangerous condition.[42] The Movants allege that they did not construct the fire door sill," and they "had no knowledge, prior to October 27, 2015, that the fire door sill posed any risk of injury to passengers."[43] The Movants allege that "over 17,000 passengers and crew" have traversed the ship and there have been "no reported incidents with the fire door sill, other than the

---

[37] *Id.* at 24.

[38] *Id.* at 3.

[39] *Id.* at 26.

[40] *Id.* at 3.

[41] *Id.* at 26 (citing *Lombardi v. NCL (Bahamas) Ltd.*, No. 15-20966, 2016 WL 1429586, at *2 (S.D. Fla. Apr. 12, 2016)).

[42] *Id.* at 26.

[43] *Id.* at 3.

one involving Plaintiff."[44] For these reasons, the Movants argue that they did not breach a duty to Plaintiff and the motion for summary judgment should be granted.[45]

**B.**    ***Plaintiff's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Plaintiff asserts that the Movants waived their right to assert improper venue and that several issues of material fact remain regarding whether the Movants breached a duty to Plaintiff.[46] First, Plaintiff asserts that the Movants waived their right to assert improper venue when they failed to raise the issue in their answer to the complaint or in a separate motion to dismiss.[47] Next, Plaintiff argues that there remain genuine issues of material fact as to whether the fire door sill presented an unreasonable risk of harm to Plaintiff, whether the Movants were on notice of the dangerous condition, and whether the Movants failed to adequately warn Plaintiff of the condition.[48]

**1.**    **Forum Selection Clause Agreement**

Plaintiff asserts that the Movants "waived the defense of improper venue."[49] Plaintiff contends that "[u]nder Federal Rule of Civil Procedure 12(b)(3), the defense of improper venue must be raised by either a pre-answer motion to dismiss or in a responsive pleading."[50] Plaintiff alleges that the Movants "failed to file a motion to dismiss and failed to assert improper venue as

---

[44] *Id.*

[45] *Id.* at 27.

[46] Rec. Doc. 97 at 1.

[47] *Id.* at 1.

[48] *Id.* at 1–2.

[49] *Id.* at 1.

[50] *Id.*

an affirmative defense in their Answer."[51] Plaintiff further asserts that the Movants stated in their answer that "they do not contest this Court's jurisdiction over this dispute or that venue is proper."[52] Plaintiff further asserts that the Movants' "waiver is further documented by the Scheduling Order in this matter which provides, after a conference with the parties, that 'jurisdiction and venue are established.'"[53] Therefore, Plaintiff contends that the Movants have waived the ability to enforce the FSC.

## 2. Negligence

Plaintiff also argues that several genuine issues of material fact remain in the case on whether the fire door sill presented an unreasonable risk of harm to Plaintiff, whether the Movants were on notice of the dangerous condition, and whether the Movants failed to adequately warn Plaintiff of the condition.[54] First, Plaintiff asserts that the Movants "had actual knowledge the fire door sill was an unreasonable risk of harm because during the site inspection of the Emerald Waterways vessel, Teresa Hannaford, co-owner of Defendant, Couples Cruise, LLC, slipped and fell on the exact same fire door sill injuring her knee."[55] Plaintiff alleges that Paola Guzman, the head of international sales for the Movants, was present for the site inspection and witnessed the fall.[56] Plaintiff argues that Teresa Hannaford's ("Mrs. Hannaford") fall put the Movants on notice that the fire door sill was a "dangerous condition," yet, the Movants "failed to take any corrective

---

[51] *Id.* at 1–2.

[52] *Id.* at 10 (quoting Rec. Doc. 53).

[53] *Id.* at 10 (quoting Rec. Doc. 26).

[54] *Id.* at 1–2.

[55] *Id.* at 2.

[56] *Id.*

action to prevent the dangerous condition from causing injury to any other passengers, including Plaintiff."[57]

Plaintiff asserts that the Movants and Couples Cruise coordinated to address two other issues that caused injuries during the site inspection, but failed to address the fire door sill as a hazard.[58] Plaintiff further asserts that after she fell, Robert Hannaford ("Mr. Hannaford"), sent an email to Paola Guzman stating, "'A passenger, Sharon Marten, fell today when she tripped over the raised section in the hallway. If you remember, Tess tripped on the same exact obstacle on our site inspection after being on board for a very short time.' 'The obstacle is painted with yellow stripes, but it is a hazard.'"[59] Plaintiff asserts that "despite clear notice that this area was a problem, neither the Hannafords or[sic] Scenic addressed the problem by placing signs or clear markings to warn that the stainless-steel strip posed a safety risk to passengers."[60]

Next, Plaintiff contends that this case is similar to *Thomas v. W&T Offshore, Inc.*,[61] where, Plaintiff argues, this Court "determined that the question of whether a particular condition was an open and obvious hazard was a genuine question of material fact that could not be decided on a motion for summary judgment."[62] Plaintiff asserts that the plaintiff in *Thomas* alleged that he tripped and fell on a vessel, but the defendant insisted it did not have a duty to plaintiff because the condition was "open and obvious."[63] Plaintiff asserts that this Court applied Louisiana law to

---

[57] *Id.*

[58] *Id.* at 3–5.

[59] *Id.* at 7 (quoting Rec. Doc. 81-8 at 41–42).

[60] *Id.*

[61] No. 16-14694, 2018 WL 4223589 (E.D. La. Aug. 27, 2018).

[62] Rec. Doc. 97 at 11.

[63] *Id.*

the facts to find that despite the defendant's assertion that no dangerous condition existed, the issue was one for the trier of fact.[64] Plaintiff also asserts that "[i]t is squarely within the province of the trier-of-fact to determine the degree to which [Plaintiff] could have, or should have observed, the fire door sill."[65] Thus, Plaintiff urges this Court to deny the Movants' motion for summary judgment.[66]

## C.    *The Movants' Arguments in Further Support of the Motion for Summary Judgment*

In reply, the Movants argue that Plaintiff "failed to demonstrate any valid reason or basis to bar or limit the enforcement of [the] forum selection provision."[67] The Movants assert that under both Louisiana and federal law "Plaintiff bears the burden of proving that [the Movants] waived their right to seek enforcement of the forum selection [clause.]"[68] The Movants contend that "[w]aiver of a forum selection clause does not occur when a party fails to file [a] motion to dismiss in advance of answering because [t]here is, however, a strong public policy in favor of enforcing forum selection clauses, and as such, waiver of a forum selection clause should not be found lightly."[69] The Movants assert that a defendant may raise a forum selection clause as a defense

---

[64] *Id.* at 11–14 (citing *Hutchinson v. Knights of Columbus*, 2003-1533 (La. 2/20/04); 866 So.2d 228, 235 (the degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous); *Eisenhardt v. Snook*, 2008-1287, (La. 3/17/09), 8 So.3d 541, 544-45 ("It is the court's obligation [i.e., the trier of fact] to decide which risks are unreasonable based upon the circumstances of each case."); *Waller v. Shelter Mut. Ins. Co.*, 41-215, (La. App. 2 Cir. 6/28/06), 935 So.2d 288, 289-290 ("Whether a defect presents an unreasonable risk of harm is a mixed question of fact and law that is a peculiarly a question for the jury or trier of fact.")).

[65] *Id.* at 14.

[66] *Id.* at 14–15.

[67] *Id.* at 3–4.

[68] *Id.* at 2 (citing *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1216).

[69] *Id.* at 3 (quoting *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F.Supp.2d 542, 566-570 (S.D.N.Y. 2013) (internal quotation marks omitted)).

even after the defendant answers.[70] Because "Plaintiff failed to demonstrate any valid reason or basis to bar or limit the enforcement of the forum selection provision," the Movants contend that the case should be dismissed.[71]

The Movants also argue that Plaintiff failed to provide evidence that the fire door sill was a dangerous condition.[72] First, the Movants assert that "'[Plaintiff] testified in her deposition that she does not know how she fell.' Since Plaintiff doesn't know how she fell, it follows that Plaintiff has no personal knowledge of whether there was any defect in the fire door sill that caused her injury or that some defect caused her fall."[73] Then, the Movants argue that "Plaintiff has offered no evidence that the fire door sill was not in compliance with any applicable law, rule or regulation."[74]

The Movants also allege that testimony regarding Mrs. Hannaford's fall during the vessel inspection is "inadmissible and irrelevant evidence."[75] The Movants assert that this evidence is particularly irrelevant on the issue of a dangerous condition because "Ms. Hannaford's incident undeniably happened because she was not paying attention, like Plaintiff. Both Mr. and Ms. Hannaford testified that Ms. Hannaford fell because she was not paying attention and that she is clumsy and often falls."[76] The Movants also object to Plaintiff's use of the "conclusory statements and opinions of Mr. Hannaford" and Plaintiff's own "speculative and conclusory statement that

---

[70] *Id.*

[71] *Id.* at 3–4.

[72] *Id.* at 4.

[73] *Id.* (quoting Rec. Doc. 81-2).

[74] *Id.*

[75] *Id.*

[76] *Id.* (citing Rec. Doc. 81-7, 81-8).

the fire door sill was not 'clearly marked' and that the fire door sill was a 'hazardous condition.'"[77] The Movants contend that Plaintiff's "testimony is inadmissible non-expert opinion testimony regarding warnings."[78] Finally, the Movants assert that Plaintiff's reliance on Louisiana law is misplaced because the case is governed by general maritime law.[79]

Last, the Movants argue the fire door sill was an "open and obvious condition" that the Movants had no duty to warn Plaintiff about.[80] The Movants assert that Plaintiff has not shown that the Movants had actual or constructive knowledge of the condition.[81] The Movants contend that Mrs. Hannaford's fall during the vessel inspection does not establish actual or constructive notice as Mrs. Hannaford admitted she fell because she was not paying attention.[82] The Movants further argue that even if Paola Guzman was present for the fall, "[k]nowledge of a mere employee of the corporation ordinarily is not imputed to the company."[83] Accordingly, the Movants assert that Plaintiff presents no evidence that the company was on notice of a dangerous condition because of Mrs. Hannaford's fall.[84] For these reasons, the Movants urge the Court to grant their motion for summary judgment.[85]

---

[77] *Id.* at 4–5.

[78] *Id.* at 5.

[79] *Id.*

[80] *Id.* at 5–7.

[81] *Id.* at 7.

[82] *Id.*

[83] *Id.* at 8 (citing 10 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 807 (2012)).

[84] *Id.*

[85] *Id.* at 10.

<h1 style="text-align:center">III. Legal Standard</h1>

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[86] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[87] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[88] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[89] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[90]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[91] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element

---

[86] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[87] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[88] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[89] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[90] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[91] *Celotex*, 477 U.S. at 323.

of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[92] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[93]

In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[94] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[95] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[96]

## IV. Analysis

As stated more fully above, the Movants argue that the Court should grant summary judgment because the case is governed by the FSC, but even if the FSC is unenforceable, the

---

[92] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[93] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[94] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[95] *Little*, 37 F.3d at 1075.

[96] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

Movants did not breach a duty toward Plaintiff.[97] In opposition, Plaintiff argues that the Movants waived their ability to assert improper venue based on the FSC and that there remain several issues of material fact regarding whether the Movants breached a duty in maintaining the fire door sill.[98]

**A.** *The Forum Selection Clause Agreement*

### 1. Waiver of the Right to Enforce the FSC

The Movants argue that the FSC requires that this case be litigated in a civil court in Switzerland.[99] Plaintiff asserts that under Federal Rule of Civil Procedure 12(h), the Movants waived their right to assert this argument because they did not previously raise the issue in their answer or in a motion to dismiss.[100] Federal Rule of Civil Procedure 12(h) provides, in relevant part, that a party waives the right to raise the defense of improper venue under Rule 12(b)(3) "by "failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."[101] Here, the Movants failed to raise the FSC in their answer or any prior documents. Thus, the Movants would not be entitled to raise the FSC if enforcement of the FSC is properly characterized as an improper venue defense.

However, in *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. W.D. Tex.*,[102] the United States Supreme Court concluded that "Rule 12(b)(3) motions are not proper mechanisms to enforce a forum-selection clause."[103] The Court reasoned that Rule 12(b)(3) only applies where venue is

---

[97] Rec. Doc. 81-12 at 2–4.

[98] Rec. Doc. 97 at 1–2.

[99] Rec. Doc. 81-12 at 20–21.

[100] Rec. Doc. 97 at 9–11.

[101] Fed. R. Civ. P. 12(h).

[102] 571 U.S. 49 (2013).

[103] *Id.* at 580.

improper because the facts of the case fail to satisfy one of the criteria described in 28 U.S.C. § 1391.[104] However, if the case fits within one of the provisions of § 1391, then venue is proper and "a forum-selection clause does not [then] render venue in a court 'wrong' or 'improper.'"[105] Instead, the Court views the forum selection clause as a separate issue, best analyzed as a motion to transfer.[106] The Court specifically noted that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[107]

In *Weber v. PACT XPP Techs., AG*, the Fifth Circuit followed the Supreme Court's decision in *Atlantic Marine*, declaring that "the proper mechanism to enforce an [sic] FSC that calls for litigation in a domestic state court or in a foreign court is through a motion to dismiss on grounds of [*forum non conveniens*]."[108] In the instant motion, the Movants argue that the litigation is governed by the FSC that mandates a civil court in Switzerland as the proper forum.[109] Because the forum selection clause at issue calls for litigation in a foreign court, Fifth Circuit precedent directs this Court to analyze the waiver and enforceability of the FSC under the doctrine of *forum non conveniens* ("FNC").

Fifth Circuit law is unsettled on what constitutes waiver of a FSC, and the Circuit has noted that "[t]here is a lack of authority determining whether federal or state law principles control the

---

[104] *Id.*

[105] *Id.* at 579.

[106] *Id.* The Supreme Court acknowledged that some circuits treat a forum selection clause argument as a 12(b)(6) motion to dismiss but declined to rule on whether it is an appropriate mechanism because the issue was not before it in that case. *Id.* at 580. The Fifth Circuit has likewise declined to decide "[w]hether Rule 12(b)(6) is a valid mechanism for enforce a forum selection clause." *Sultana Entm't, L.L.C. v. Gutierrez*, 740 F. App'x 81, 82 (5th Cir. 2018).

[107] *Atlantic Marine*, 571 U.S. at 580.

[108] 811 F.3d 758, 766 (5th Cir. 2016)

[109] Rec. Doc. 81-12 at 20–21.

standard for determining a party's waiver of rights under a forum selection clause."[110] Yet, the Fifth Circuit has articulated two potential tests to access whether a defendant has waived enforcement a forum selection clause.[111] One line of authority "applies a traditional waiver standard to forum selection clauses."[112] "These cases hold that waiver of a forum selection clause requires: '(1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) actual intent to relinquish that right.'"[113] Waiver can also occur if a party engages in "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."[114] "A second line of authority, articulating both federal and [state]law, would apply essentially the test used by federal courts to assess waiver of arbitration clauses, which are a species of forum selection clause."[115] Under this test, "the party to the [forum selection] clause waives its right if it '(1) substantially invokes the judicial process [in derogation of the forum selection clause] and (2) thereby causes detriment or prejudice to the other party.'"[116]

Under the first line of authority that examines whether a party "intentionally or voluntarily relinquished its rights under the clause," courts look to whether a party already raised the forum selection clause argument in earlier pleadings or other legal settings.[117] If a party asserts a forum

---

[110] *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426 (5th Cir. 2016) (quoting *Wellogix, Inc. v. SAP Am., Inc.*, 648 Fed. Appx. 398, 401 (5th Cir. 2016)).

[111] *Id.*

[112] *Id.* at 426.

[113] *Id.* at 426 (quoting *GP Plastics Corp. v. Interboro Packaging Corp.*, 108 Fed. Appx. 832, 835–36 (5th Cir. 2004)).

[114] *Id.* (quoting *N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc.*, 513 F.3d 466, 470 (5th Cir. 2007)).

[115] *Wellogix*, 648 Fed. Appx. at 401.

[116] *Id.* at 402 (quoting *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014)).

[117] *Id.* at 401 (finding that defendant successfully enforced the clause by using it in other litigation and preserving rights when filing documents in the current case); *GP Plastics Corp.*, 108 Fed. Appx. at 836–37 (finding forum selection clause not waived where defendant already filed litigation in the forum).

selection clause within litigation, this may demonstrate that the party did not intend to relinquish the right.[118] However, where a defendant failed to raise the argument earlier in a case and never submitted a motion to dismiss based on that argument, these actions can be indicative of a party "intentionally and voluntarily relinquish[ing] its rights under the forum-selection clause through 'conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.'"[119]

Analyzed under the first line of authority, the Movants engaged in several actions that seemed to waive their right to assert that the FSC applies. In the thirteen months since the Movants were joined in the litigation, they did not raise enforcement of the FSC argument in their answers or any prior motions. Further, the Movants stated in their answer that "[t]o the extent that a response is required, Defendants state that they do not contest this Court's jurisdiction over this dispute or that venue is proper."[120] Though *Atlantic Marine* clarified that a FSC can apply even where venue is proper, the Movants' admission that they did not contest this Court's jurisdiction could signal their intent to relinquish the right to enforce the FSC. Further, even if the Court stopped short of drawing this conclusion, the Movants acceptance of this Court's jurisdiction could

---

[118] *GP Plastics Corp.*, 108 Fed. Appx. at 836–37.

[119] *Hampton v. Equity Tr. Co.*, 736 F. App'x 430, 436 (5th Cir. 2018) (quoting *SGIC Strategic*, 839 F.3d at 426); *Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 381 (S.D.N.Y. 2010) (finding waiver of the forum selection clause where the "[defendant] made no mention of the clause in its answer, nor did it at any time file a motion to dismiss based on the forum selection clause"); *MoneyForLawsuits V LP v. Rowe*, No. 4:10-CV-11537, 2012 WL 1068171, at *5 (E.D. Mich. Jan. 23, 2012) (finding waiver where defendants failed to raise the issue in their answers or a motion to dismiss or transfer the case); *In re Deleas Shipping Ltd.*, 1996 AMC 434 (W.D. Wash. 1995) ("forum selection clause will be deemed waived if the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and other parties would be prejudiced."); *In re Rationis Enterprises, Inc. of Panama*, No. 97 CV 9052 (RO), 1999 WL 6364, at *2 (S.D.N.Y. Jan. 7, 1999).

[120] Rec. Doc. 53 at 6.

at the least represent "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."[121]

Similarly, the Movants may have waived the FSC under the second line of authority. In applying the second line of authority, the Fifth Circuit examines the extent to which a party has invoked the judicial process to the detriment of the other party.[122] The Fifth Circuit stated that "[t]o invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the...dispute through litigation. Litigation on the merits can substantially invoke the judicial process."[123] An example of litigation on the merits can be a party delaying filing an opposition based on a FSC and never filing a motion to dismiss or transfer venue.[124] Yet, the Fifth Circuit has also looked for more substantive reliance on the judicial process such as pursuing litigation in another forum or seeking a decision on the merits.[125]

Here, it is arguable that the Movants invoked the judicial process by litigating the case in this Court for over a year and filing joint documents with the Plaintiff in observation of this Court's deadlines and rules.[126] The Movants did not assert enforcement of the FSC in any document before the instant motion for summary judgment and they did not mention the FSC in the joint status

---

[121] *SGIC Strategic*, 839 F.3d at 426.

[122] *Hampton*, 736 F. App'x at 435.

[123] *Id.* (quoting *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010)) (internal citations omitted).

[124] *Id.* at 436.

[125] See *id.* (finding that defendant substantially invoked the judicial process after "ignoring readily available mechanisms for invoking the forum-selection clause," conducting depositions, completing discovery, delaying two years, and filing a summary-judgment motion based on res judicata); *In re Mirant Corp.*, 613 F.3d at 589 (finding invocation of the judicial process where defendant filed two motions to dismiss based on affirmative defenses of waiver and release); *see also Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate.").

[126] *See* Rec. Docs. 57, 72.

report that was filed on May 3, 2018.[127] The Movants also included negligence arguments in the instant motion "as an independent and alternative basis for dismissal of Plaintiff's suit, with prejudice."[128] In *In re Mirant Corp.*, the Fifth Circuit acknowledged that seeking a dismissal with prejudice can be a decision on the merits.[129]

The Movants also created some prejudice to Plaintiff by invoking the judicial process in this Court. Per the Fifth Circuit, "[p]rejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position."[130] Though this statement focuses on waiver of an arbitration clause, the Fifth Circuit has acknowledged that arbitration clauses "'are a species of forum selection clause.'"[131] Applying concepts of delay and expense to this case, the Court notes that the litigants engaged in litigation for over a year, taking depositions and completing discovery. The Movants raised enforcement of the FSC after Plaintiff had expended significant effort and expense to litigate in this forum. Requiring Plaintiff to litigate the case to Switzerland would not only delay Plaintiff's case, but because Plaintiff has litigated in this Court for two years, it could prejudice Plaintiff's legal position.

Despite several factors indicating that the Movants waived enforcement of the FSC, this Court also acknowledges that there is "a 'strong public policy' in favor of enforcing forum selection clauses, and as such, waiver of a forum selection clause 'should not be found lightly.'"[132]

---

[127] Rec. Doc. 72.

[128] Rec. Doc. 81-12 at 3.

[129] *In re Mirant Corp.*, 613 F.3d at 589.

[130] *Hampton*, 736 F. App'x at 435 (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009)).

[131] *SGIC Strategic*, 839 F.3d at 426 (quoting *Wellogix*, 648 Fed. Appx. at 401).

[132] *Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC*, 690 F.Supp.2d 311, 327 (S.D.N.Y. 2010) (internal citations omitted).

Several courts have declined to find that a party waived enforcement a forum selection clause even where there was delay in invoking the argument.[133] Further, while the Movants have delayed in asserting the enforceability of the FSC, they did not pursue litigation in any other forums and did not seek a decision on the merits in any prior motions. Thus, while the Movants may have waived enforcement of the FSC, there are also arguments that support the Movants' assertion that their ability to seek enforcement of the FSC was not waived.  For these reasons, and also because Fifth Circuit precedent on this issue remains unsettled, this Court will not rule on whether the FSC was waived. Instead the Court will follow the Supreme Court's directive in *Atlantic Marine* and analyze the enforcement of the FSC under the doctrine of *forum non conveniens*.

### 2. Enforceability of the Forum Selection Clause

As stated above, "[t]he Supreme Court recently clarified that 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens.'"[134] According to the Fifth Circuit, "the analysis of forum non conveniens turns in large part on whether the forum selection clause is enforceable."[135] Courts typically "apply a 'strong presumption' in favor of enforcing mandatory forum-selection clauses."[136] "This presumption may be overcome by a clear showing that a forum-selection clause is 'unreasonable' under one of the following circumstances:"

> (1) [T]he incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness

---

[133] *Id.*; *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 567 (S.D.N.Y. 2013).

[134] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atlantic Marine*, 571 U.S. at 580).

[135] *Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.*, 606 F. App'x 782, 784 (5th Cir. 2015).

[136] *Al Copeland Investments, L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018).

of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state.[137]

The party resisting enforcement on these grounds bears a "heavy burden of proof."[138]

In this case, Plaintiff's only argument against the FSC is that the Movants waived enforcement of the clause. Plaintiff does not present any evidence that the FSC is unreasonable. Under *The Breman*'s standard, Plaintiff failed to meet her "heavy burden of proof."[139] However, the Supreme Court's decision in *Carnival Cruise Lines, Inc. v Shute*, guides this Court in independently examining enforcement of the FSC for fairness.[140]

In *Carnival Cruise Lines*, the Supreme Court found that a forum selection clause in a cruise ship contract is enforceable where the clause is reasonable.[141] The Court noted a cruise line's interest in limiting the fora in which it can be subject to suit, the saved expense of parties litigating over a correct forum, and reduced fares resulting from a cruise line limiting the fora in which it can be sued.[142] The Court further found that the Plaintiff did not meet her "heavy burden of proof" in showing that the enforcement of the clause was inconvenient because Florida was not a "remote alien forum" and the alleged accident was not local to Plaintiff's home state of Washington.[143] The Court also noted that the Plaintiff presented no evidence of fraud, overreaching, or lack of notice.[144]

---

[137] *Id.* at 543 (quoting *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)).

[138] *Haynsworth*, 121 F.3d at 963 (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)).

[139] *The Bremen*, 407 U.S. at 17.

[140] *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

[141] *Id.*

[142] *Id.* at 593–94.

[143] *Id.*

[144] *Id.* at 595–96.

Although the Court determined that the Plaintiff had not met her burden of proof, it emphasized that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."[145]

Some courts have interpreted this statement to indicate that "although a party would continue to bear 'the heavy burden of proof' established in *The Bremen*, courts remain[] free to examine these clauses for proof of a lack of 'fundamental fairness,' including for the concerns identified in *The Bremen* such as fraud or overreaching, or a lack of notice to the party resisting enforcement."[146] Here, though Plaintiff does not present any evidence to meet her burden of proof that the FSC is unreasonable, counsel for the defense presented information during oral argument that compels this Court to examine whether there was a lack of notice that would render enforcement of the FSC fundamentally unfair.

During oral argument, the Movants' counsel informed the Court that though Mrs. Hannaford previously stated in her deposition that she had obtained a copy of the PTTC, when she later searched her email for the document, she was unable to locate it. The Movants' counsel indicated that Mrs. Hannaford now only recalls receiving a copy of a PTTC when she went on the site inspection of a different ship. Thus, it remains unclear whether Mrs. Hannaford received a PTTC regarding the EMERALD STAR. Though defense counsel urged the Court that Mrs. Hannaford's deposition testimony stating that she received notice is what should control, the Court now has conflicting facts in the record on whether Mrs. Hannaford received notice of the FSC.

---

[145] *Id.* at 596.

[146] *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1241 (11th Cir. 2012) (quoting *Carnival Cruise Lines*, 499 U.S. at 595); *see also Monteville v. M/V ENCHANTED SEAS*, No. 95-3762, 1992 WL 752899, at *1 (E.D. La. Apr. 16, 1996) (independently finding adequate notice on even though plaintiff did not meet the burden of proof).

The Movants' argument that the FSC should be enforced against Plaintiff is based on the premise that as the Hannafords' guest on the EMERALD STAR, Plaintiff received constructive notice of the FSC via her fellow passengers. Yet, if Mrs. Hannaford did not receive notice of the FSC for the specific cruise in question, then this notice cannot be imputed to Plaintiff. "[I]n order for a forum selection clause to be enforceable, it must have been reasonably communicated to the non-drafting party."[147] Because it is unclear whether Mrs. Hannaford, and hence Plaintiff, received notice of the FSC terms, there remains a genuine issue of material fact. Accordingly, the Court will deny the Movants request for summary judgment on enforcing the forum selection clause.

**B.    *Negligence***

The Movants argue that under general maritime law, Plaintiff cannot prove that the Movants had a duty regarding the fire door sill or breached a duty of care regarding Plaintiff.[148] Plaintiff cites Louisiana law for the assertion that the fire door sill was an "open and obvious" condition that the Movants failed to remedy.[149] The Movants replied by asserting that general maritime law, and not Louisiana law, applies to the case.[150]

The Fifth Circuit has consistently found that "[i]njuries caused by slip and fall accidents on board a vessel…constitute maritime torts."[151] The elements of a maritime negligence cause of

---

[147] *Flowserve Corp. v. Hallmark Pump Co.*, No. 09-0675, 2010 WL 2232285, at *2 (S.D. Tex. Feb. 3, 2010) (citing *Carnival Cruise Lines*, 499 U.S. at 590); (noting that the non-movant was given notice of the forum provision before entering the contract); *Effron v. Sun Line Cruises, Inc*., 67 F.3d 7, 9 (2d Cir. 1995) (noting that "the legal effect of a forum selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff"); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) ("The legal effect of a forum-selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff.").

[148] Rec. Doc. 81-12 at 24.

[149] Rec. Doc. 97 at 1–2.

[150] Rec. Doc. 105-2 at 5.

[151] *Palmer v. Fayard Moving and Transportation Corp.*, 930 F.2d 437, 441 (5th Cir. 1991).

action are essentially the same as land-based negligence under the common law.[152] "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'"[153] A duty is owed only with respect to an interest that is foreseeably jeopardized by an act or omission."[154] A harm is not foreseeable unless it "might have been anticipated by a reasonably probable result of the act or omission."[155]

Here, Plaintiff asserts that the Movants were on notice of a dangerous condition when Mrs. Hannaford tripped and fell over "the exact same fire door sill" on an "exact same" ship as the EMERALD STAR.[156] Plaintiff contends that Ms. Guzman, an employee of the Movants, was present for the fall, and this constituted notice to the defendants regarding the hazard presented by the fire door sill.[157] Plaintiff thus argues that her fall was foreseeable and avoidable had the Movants exercised reasonable care.[158] The Movants assert that Mrs. Hannaford fell "because she was not paying attention, like Plaintiff."[159] The Movants also argue that the fact that Ms. Guzman witnessed the fall does not equate with the company having notice of that the condition on that

---

[152] *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005).

[153] *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (citing *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)).

[154] *Penn Mar., Inc. v. Rhodes Elec. Servs., Inc*., 41 F. Supp. 3d 507, 516 (E.D. La. 2014), as corrected (Sept. 19, 2014) (citing *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010)).

[155] *Id.* (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 6 F.3d at 211–12).

[156] Rec. Doc. 97 at 2–3.

[157] *Id.*

[158] *Id.* at 4–5.

[159] Rec. Doc. 105-2 at 4.

particular ship would pose a hazard to Plaintiff on the EMERALD STAR.[160] Examining both sides' arguments, it is clear there is a genuine issue of material fact over whether the Movants had notice that the fire door sill was a hazard. The issue of foreseeability, and hence whether the Movants had a duty regarding the fire door sill, cannot be decided if there is a genuine issue of fact on whether the Movants had notice of the condition. Accordingly, the Court will deny summary judgment on the issue of negligence.

### V. Conclusion

There remains a genuine issue of material fact on whether Plaintiff had notice of the forum selection clause and whether the Movants had notice of a dangerous condition. Because genuine issues of fact remain in the case, the Movants are not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Scenic Tours Europe AG's and MS Emerald Star AG's "Motion for Summary Judgment"[161] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __19th__ day of December, 2018.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[160] *Id.* at 6–8.

[161] Rec. Doc. 81.